UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

H. PATRICK BARCLAY,

                            Plaintiff,

       -v-                                9:02-CV-1463

STATE OF NEW YORK; T. RICKS; JOHN ROE,
Corrections Officer; MR. KENNY, Corrections
Officer; J. KELLY, Hearing Officer; DONALD
SELSKY, Director; JOHN DOE, Sergeant;
ZERNIGIL, Sergeant; E. HALL, Corrections
Officer; T. ASHLAW, Corrections Officer;
J. BERKMAN, Corrections Officer; T. JAMES,
Corrections Officer; LT. LAVALLEY, Corrections
Officer;

                         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                      OF COUNSEL:

H. PATRICK BARCLAY, Plaintiff pro se
97-A-5659
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902

A.J. BOSMAN, ESQ.
Pro bono trial attorney for plaintiff
258 Genesee Street, Suite 301
Utica, NY 13502

HON. ANDREW M. CUOMO         ED J. THOMPSON, ESQ.
Attorney General for the State of New York    Ass't Attorney General
Attorney for Defendants
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204

DAVID N. HURD
United States District Judge

**MEMORANDUM-DECISION and ORDER**

**I. INTRODUCTION**

Plaintiff H. Patrick Barclay ("Barclay" or "plaintiff") filed the complaint in this civil rights action brought pursuant to 42 U.S.C. § 1983 on November 20, 2002.  He filed an amended complaint on January 24, 2003.  The claims alleged include violations of the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, conspiracy, racial discrimination, and retaliation.  Defendants moved for summary judgment with permission in order to narrow the issues for trial.  Plaintiff opposed.  The motion was taken on submission without oral argument.

**II. FACTS**

Barclay avers that he is black, a protected class.  He is fairly litigious, having filed at least two state court actions relating to his alleged physical disability (requires a cane for walking) and at least four other actions in federal court relating to his imprisonment.  (Am. Compl. at 4-7[1].)  Plaintiff has filed numerous grievances related to prison misbehavior proceedings.  See, e.g., id. at 11.

There is some dispute regarding the facts surrounding the events that led to Barclay's misbehavior reports and subsequent grievances.  The facts presented by the parties are set forth below.  When disputed, the facts, inferences from them, and any ambiguities are taken in the light most favorable to Barclay.  See Matsushita Elec. Indus. Co.

---

[1]  References throughout are to pages in the Amended Complaint because references to paragraph numbers would not enable one to ascertain the appropriate location in the twenty-page hand-written document.

<u>v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  Significant variations in the versions of events are pointed out for demonstrative purposes.

On February 4, 2001, defendant Corrections Officer J. Berkman ("CO Berkman") issued plaintiff a misbehavior report alleging four rule violations.  Plaintiff did not attend the hearing.  Plaintiff was unable to attend because prison officials would not permit him to use his cane to ambulate to the hearing, not, as defendants suggest, because he refused to go.

On February 27, 2001, defendant Corrections Officer T. James ("CO James") threw plaintiff's lunch tray on the ground telling him to "get it off the ground, dog."  Plaintiff refused, saying "I'm not your dog."   Defendant Corrections Officer T. Ashlaw ("CO Ashlaw") was collecting lunch trays.  Barclay informed CO Ashlaw that he had not been fed.  Plaintiff asked to talk to a sergeant.  According to CO Ashlaw, plaintiff refused to give up his lunch tray until he talked to a sergeant.  He notified defendant Sergeant Zernigil ("Sgt. Zernigil"), then issued Barclay a misbehavior report charging him with two violations--disobeying a direct order and violation of mess hall policy.  Plaintiff did not attend the hearing.  Barclay did not attend because no corrections officer called him out to do so, rather than as defendants again suggest, that he refused.  Defendant hearing officer Lt. Lavalley ("Lt. Lavalley") found plaintiff guilty of the charged misbehaviors.  The finding of guilt was upheld on appeal.  As a result of this incident plaintiff claims that his due process rights were violated because he was not called out to attend the hearing.  He also claims that CO James refused him meals from February 27, to March 1, 2001; CO Ashlaw refused to feed him on February 27, 2001; and defendant Superintendent of Upstate Correctional Facility T. Ricks ("Super. Ricks") knew he was not being fed, all contrary to his Eighth Amendment rights.

On March 1, 2001, CO Berkman issued a misbehavior report to plaintiff alleging violation of a direct order--refusal to close the recreation door.  According to plaintiff, the door could not be closed due to an electrical problem.  CO Berkman issued an order to deprive Barclay of recreation.  Barclay was denied recreation for sixty days, in addition to keeplock, loss of packages, and loss of commissary.  Plaintiff claims that this denial of recreation deprived him of adequate exercise, depriving him of a liberty interest without due process.

Plaintiff was also given misbehavior reports on December 3, 2000; March 24, 2001; April 25, 2001; and May 18, 2001,[2] by corrections officers who are not named in this action. He was found guilty in each instance.  The guilty findings relating to the December 3, 2000, March 24, 2001, and April 25, 2001, misbehavior reports were upheld on appeal.  Barclay did not appeal the guilty finding as to the May 18, 2001, charge.  The punishment imposed for each instance consisted of thirty days of keeplock, loss of packages, and loss of commissary.

On November 21, 2001, there was an incident between Barclay and his cellmate Wingate in their cell.  According to the unusual incident report, a corrections officer noticed Barclay and Wingate appeared to have been fighting in their cell.  The officer ordered Wingate to lock out in the recreation area.  He complied.  Also, he blamed Barclay, stating that Barclay had attacked him with a pen.  The officer then ordered Barclay to come to the gate.  Barclay's pen and legal papers were on his bed.  He attempted to obey, but due to weak legs he had to sit on the bed.  The officer then directed plaintiff to bring the pen to him.

---

[2] Records submitted by defendants show that plaintiff was found guilty of misbehaviors on twenty occasions between 1997 and early 2003.  (Not. Mot. Ex. I.)  These specific instances were set forth by defendants as undisputed facts, uncontroverted by plaintiff, and so are noted as such.

He told the officer that his legs were too weak to walk.  The officer called for the sergeant and medical assistance.

The sergeant requested that plaintiff lay face down on the floor.  The complaint named the sergeant as John Doe.  Plaintiff now states that he has determined this to be Sergeant O. Chapman ("Sgt. Chapman"), and defendants do not disagree. The sergeant opened the cell gate and ordered the officers to retrieve plaintiff.  The officers came in to the cell in full battle gear with weapons and plexiglass.  The officers who responded were Skiff, defendant Mr. Kenny ("CO Kenny"), Oropallo, and King.  Plaintiff named another officer as John Roe in the complaint.  He states that he now knows this to be officer Skiff ("CO Skiff"). He did not name Oropallo or King in the complaint.

The officers jumped on plaintiff's back causing him pain, and pushed the plexiglass shields into his shoulders causing cuts.  Barclay's elbow was also bruised.  The officers placed plaintiff on a stretcher and took him out of the cell for medical treatment.  According to CO Skiff's account, at Sgt. Chapman's direction, he entered Barclay's cell, obtained control of Barclay's legs while mechanical restraints were applied, then assisted in carrying plaintiff to the medical holding area.  (Defts.' Ex. B.)  According to CO Kenny, he applied mechanical restraints and helped plaintiff to the gurney for transportation to the holding pen to await medical treatment.  Id.  Thus, defendants assert that no force was used; the officers merely secured Barclay to a stretcher for transport to the medical area.  Further, both CO Skiff and CO Kenny noted that plaintiff did not resist and was limp.  Plaintiff offers no other factual account of these defendants' involvement.

The nurse noted that Barclay had cuts on both lips, a bloody nose, and various scratches and abrasions on his neck, hands and fingers.  In addition, his dreadlocks were pulled out of his scalp on the right side.

Wingate also received medical treatment.  It was noted that he had punctures and scratches to his left upper back, his front left chest, left eye, and right hand.  He also had a bruise on his palm.  Wingate reported that plaintiff had attacked him with a pen.

Plaintiff claims that Wingate attacked him with no provocation, and that  Wingate's injuries were caused in a previous fight with a different inmate.  Regardless of how the incident occurred, it resulted in plaintiff being charged with assault on another inmate, assault on staff, disobeying a direct order, and inmate movement in violation of disciplinary rules. (Wingate was also charged with misbehavior.  He was found guilty of fighting, which was upheld on appeal.)

A Superintendent's hearing was held on December 4, 2001, with regard to the misbehavior charges against Barclay for the November 21, 2001, incident with Wingate. Defendant Hearing Officer J. Kelly ("Kelly") conducted the hearing.  She found plaintiff not guilty of assault on another inmate and not guilty of assault on staff.  However, she found plaintiff was guilty of refusing a direct order and the movement regulation violation.  Kelly assigned the punishment of 90 days keeplock, with the loss of packages, commissary, and telephone privileges for 90 days.  She also recommended 90 days loss of good time. Defendant Donald Selsky ("Selsky") reviewed and affirmed the Superintendent's hearing on February 7, 2002.  On May 23, 2003, the hearing result was administratively reversed by the New York State Supreme Court Appellate Division, Third Department.

## III.  **SUMMARY JUDGMENT STANDARD**

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Richardson v. New York State Dep't of Correctional Servs., 180 F.3d 426, 436 (2d Cir. 1999); Lang v. Retirement Living Pub. Co., 949 F.2d 576, 580 (2d Cir. 1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323,106 S. Ct. 2548, 2552 (1986); Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990).  Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant.  Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1348; Richardson, 180 F.3d at 436; Project Release v. Prevost, 722 F.2d 960, 968 (2d Cir. 1983).  Additionally, pleadings of a pro se litigant must be construed liberally.  Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972) (per curiam); Nance v. Kelly, 912 F.2d 605 (2d Cir. 1990).

When the moving party has met the burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356.  At that point, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56; Liberty Lobby, Inc., 477 U.S. at 250, 106 S. Ct. at 2511; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.  To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant.

Liberty Lobby, Inc., 477 U.S. at 248-49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

## IV. DISCUSSION

### A. Eighth Amendment

As set forth in his complaint, plaintiff claims that Sgt. Doe (Sgt. Chapman) ordered CO Kenny and John Roe (CO Skiff) in to his cell where they assaulted him, causing him to suffer bruises to his elbow and shoulder, and threatened to break body parts.  He brings various other claims under the Eighth Amendment consisting of the following:  (1) Super. Ricks assigned him to double bunk; (2) Kelly found him guilty of misbehavior regarding the November 21, 2001 assault, extended his keeplock, and failed to protect him; (3) Selsky was biased, prejudicial, arbitrary, capricious, and unfair in deciding against plaintiff regarding his appeal of the February 4, 2001, Tier III hearing; (4) Super. Ricks was arbitrary and capricious in upholding the findings of ten Tier II hearings; (5) defendant E. Hall ("CO Hall") denied plaintiff recreation from May 24, 2001, to June 26, 2001; (6) CO James denied plaintiff meals from February 27, 2001, to March 1, 2001; (7) CO Ashlaw failed to feed him on February 27, 2001; (8) Super. Ricks knew of the recreation denials by CO Hall and CO Berkman and the failure to feed by CO James and CO Ashlaw.  Barclay also claims that all defendants failed to take reasonable actions to guarantee his safety in violation of his Eighth Amendment rights.

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const. amend. VIII.  A prison deprivation violates the Eighth Amendment only when there is an "unnecessary and wanton infliction of pain."  Wilson v. Seiter, 501 U.S. 294, 297, 111 S. Ct. 2321, 2323 (1991) (internal quotation and emphasis omitted). Thus, there are both an

objective and a subjective prong in the constitutional analysis. Id. at 298, 111 S. Ct. at 2324. In order to succeed on the objective prong, the deprivation must have been sufficient seriously. Id. The subjective prong requires a "wanton infliction of pain," that is, a "sufficiently culpable state of mind" on the part of the prison official responsible for the deprivation. Id. at 297, 111 S. Ct. at 2323.

Barclay first contends that Sgt. Chapman, CO Kenny, and CO Skiff assaulted him on November 21, 2001 (that is, used excessive force). In a prison setting, some use of force may be necessary without violating the Constitution. Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973). "Not every push or shove . . . violates a prisoner's constitutional rights." Id. Only the malicious and sadistic use of force for the purpose of causing harm is actionable. Id. In determining whether the amount of force used was violative of the Constitution, the following factors must be considered: "the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Id.

Here, Sgt. Chapman approached Barclay's cell where it appeared from plaintiff's bloodied nose and mouth that an altercation had occurred. Sgt. Chapman first secured Wingate, plaintiff's cellmate, out of the cell. Wingate said that Barclay had attacked him with a pen. Sgt. Chapman ordered Barclay to come to the gate. Barclay sat on the bed where there was a pen, and did not come to the cell gate. Sgt. Chapman ordered plaintiff to hand him the pen and come to the cell gate. Plaintiff did not do so, saying his legs were too weak. It was only then that Sgt. Chapman ordered CO Kenney, CO Skiff and two other corrections officers to enter the cell and secure Barclay. Even if, in the process of securing plaintiff to a

stretcher so he could be transported for medical assistance, the corrections officers caused plaintiff some discomfort or pain and some scratches and bruising, that amount of force was justified by the need to restore discipline, secure plaintiff, and obtain medical assistance for him.  This is especially true in light of plaintiff's repeated refusals to move to the cell gate, and to hand Sgt. Chapman the pen, which could be used as a weapon.  Further, Barclay has no evidence that any defendants used force to maliciously and sadistically cause harm to him.  Thus, Sgt. Chapman (John Doe), CO Kenny, and CO Skiff (John Roe) are entitled to judgment as a matter of law on this claim.

Plaintiff claims that Super. Ricks violated his Eighth Amendment rights by assigning him to double bunk.  Double bunking is not per se unconstitutional.  See Rhodes v. Chapman, 452 U.S. 337, 47-48, 101 S. Ct. 2392, 2400 (1981).  Where it has not impacted "essential food, medical care, or sanitation" or "increase violence among inmates or create other conditions intolerable for prison confinement" or cause deprivations of other programs such as work and education, double bunking does not violate the Constitution.  Id. at 348, 101 S. Ct. at 2400.  Here, Barclay has not adduced any evidence that double bunking caused any impact upon other aspects of his prison life.  Accordingly, Super. Ricks is entitled to judgment as a matter of law on this claim.

Plaintiff claims that Kelly and Selsky violated his Eight Amendment rights in the handling of the his disciplinary proceedings.  Anomalies in disciplinary proceedings are more properly analyzed as violations of due process.  See, e.g., Batista v. Kelly, 854 F. Supp 186, 193-94 (W.D.N.Y. 1994) (considering claims of procedural difficulties with disciplinary proceedings under due process), aff'd, 50 F.3d 2 (2d Cir. 1995) (Table).  Therefore, this claim will be discussed below.

Plaintiff claims that CO Hall, CO James, CO Ashlaw, and CO Berkman violated his rights by denying recreation or food, and that Super. Ricks' knowledge of this also constituted a constitutional violation.  Limited denial of food and recreation while on keeplock confinement does not rise to the level of cruel and inhuman punishment.  Gill v. Hoadley, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003) (finding no Eighth Amendment violation with alleged denial of one meal and recreation denials of four, twenty-one, and twenty-one days on three occasions) (Report and Recommendations adopted over plaintiff's objections Jan. 9, 2004, Scullin, J.); McGuinness v. Dubois, 893 F. Supp. 2, 4 (D. Mass. 1995) (finding no constitutional violation where inmate denied recreation for disciplinary infractions), aff'd, 86 F.3d 1146 (1st Cir. 1996) (Table).  But see DeMaio v. Mann, 877 F. Supp. 89, 93 (N.D.N.Y.) (finding allegation of failure to feed for twelve consecutive days sufficient to state Eighth Amendment claim), aff'd, 122 F.3d 1055 (2d Cir.  1995).

Viewing the facts in the light most favorable to Barclay, he was issued a misbehavior report for a messhall violation and as a result was denied food two or three days, February 27 to March 1, 2001.  While plaintiff states that he sought medical help from the nurse because the denial of food caused him to suffer a headache, stomach pain, and weakness, there is no evidence, such as a medical report from that time period, to that effect.  There is also no evidence that the denial of food was done maliciously to cause pain.  Similarly, there is no evidence that Barclay suffered any ill effects from denial of exercise, and there is no evidence that plaintiff was denied recreation for any reason other than as a disciplinary measure.  In sum, there is no evidence that the deprivation was sufficiently serious or that these defendants acted with a culpable state of mind, such that a jury could find a constitutional violation.  Accordingly, CO Hall, CO James, CO Ashlaw, and CO

Berkman are entitled to summary judgment on this claim.  Moreover, because these deprivations do not constitute a constitutional violation as a matter of law, Super. Ricks knowledge of the deprivations does not implicate the Eighth Amendment and this claim will be dismissed against him as well.

Barclay alleges that all the defendants failed to protect him in violation of the Eighth Amendment.  However, there are no allegations (or evidence) of any specific instances of a failure to protect, or any harm to plaintiff as a result.  Plaintiff merely alleges that the defendants failed to take reasonable actions to guarantee his safety.  Defendants are entitled to summary judgment on any failure to protect claims.

### B. Fourteenth Amendment

### 1. Equal Protection

Barclay claims that defendants selected him for ill treatment because of his disability.  He further claims that similarly situated white inmates were not discriminated against like he was.  "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning."  Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987).  Here Barclay provides no facts as to the manner in which he was treated differently because of his disability or because of his race.  Further, he provides no facts about how other similarly situated non-disabled or white inmates were treated to demonstrate a disparity between their treatment and his.  Accordingly, plaintiff's equal protection claim must be dismissed.

### 2. Due Process

Barclay claims that Super. Ricks, Selsky, and Lt. Lavalley denied his liberty and property interests without due process.  He also alleges procedural due process violations under the Fourteenth and Fifth Amendments against Kelly, Lt. Lavalley, Super. Ricks, and Selsky.  Plaintiff's Eighth Amendment claims against CO Kelly and Selsky relating to disciplinary proceedings also are more properly analyzed as due process violations, as noted above.  The essence of plaintiff's due process claims fall into three categories:  (1) initial disciplinary hearing either not held or not completed and the decision to uphold initial hearing results were arbitrary and capricious; (2) conditions of confinement imposed as discipline amounted to a deprivation of a liberty interest (e.g., keeplock imposed upon a disabled person, inadequate exercise, and denied food for 48 hours); and (3) misbehavior reports were false.

The Fourteenth Amendment guarantees that prison inmates will not be deprived of a protected liberty interest without due process of law.  Franco v. Kelly, 854 F.2d 584, 587 (2d Cir. 1988).  Disciplinary proceedings comport with due process, despite anomalies in the proceedings such as false charges, where the inmate is provided:  "(1) advance written notice of the charges at least 24 hours before the hearing; (2) the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence; and (3) a written statement" of the basis for the decision and disciplinary action.  Id.  Moreover, if these procedural requirements have been met, then a disciplinary finding would be upheld "if there is any evidence to support" it.  Id. at 588; Freeman v. Rideout, 808 F.2d 949, 954-55 (2d Cir. 1986) (finding that , if procedural due process has been provided, disciplinary action will be upheld where "some evidence" supports the disciplinary finding).

Under Sandin v. Conner, 515 U.S. 472, 115 S. Ct. 2293 (1995), "a State might conceivably create a liberty interest" in disciplinary confinement only when the conditions "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484, 115 S. Ct. at 2300. Ordinarily fact-finding is necessary to determine if the confinement imposed atypical and significant hardship, thus creating a liberty interest and implicating due process protection. Miller v. Selsky, 111 F.3d 7, 9 (2d Cir. 1997). However, where the confinement is short and the plaintiff identifies no unusual conditions that would create an atypical and significant hardship, then extensive fact finding is not required. Hynes v. Squillace, 143 F.3d 653, 658 (2d Cir. 1998). Where a plaintiff fails to "demonstrate a significant deprivation of a liberty interest because he has not shown that the conditions of his confinement in the SHU were dramatically different from the 'basic conditions of [his] indeterminate sentence'" his due process claim fails. Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996) (quoting Sandin, 515 U.S. at 485, 115 S. Ct. at 2301). Moreover, aside from a state-created liberty interest, due process protection is afforded only when the confinement "exceed[s] the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." Sandin, 515 U.S. at 484, 115 S. Ct. at 2300 (citing Vitek v. Jones, 445 U.S. 480, 493, 100 S. Ct. 1254, 1263-64 (1980) "(transfer to mental hospital)" and Washington v. Harper, 494 U.S. 210, 221-222, 110 S. Ct. 1028, 1036-37 (1990) "(involuntary administration of psychotropic drugs)").

The first category of due process violations Barclay alleges consists of anomalies in the disciplinary process. He alleges that disciplinary hearings were not held or not completed. However, he also states that he exhausted his administrative remedies with respect to the hearings of which he complains. Specifically, he exhausted ten Tier II

proceedings at the superintendent level and one Tier III proceeding at the commissioner level.  The record evidence shows that there were three disciplinary proceedings at which plaintiff did not appear, relating to incidents that occurred on February 4, 2001; February 27, 2001; and  March 1, 2001.  (See Defts.' Ex. J-S.)  For each of these proceedings there is a written explanation of the infraction; a written notification to Barclay of the charge signed by the officer serving him with the notice; and a written record of the hearing including disposition, the basis for the decision, and an explanation for the discipline chosen.  Id. Ex. P-S (Feb. 4, 2001), Ex. M-O (Feb. 27, 2001), Ex. J-L (March 1, 2001).  The February hearing records indicate that plaintiff refused to attend the hearing.  With respect to the March 1, 2001, incident, the hearing record indicates that plaintiff refused to appear without his cane. Id. Ex. L.  He was advised that the hearing would be held in the block area where he did not require use of the cane.  Id.  It further indicated he was advised that the hearing would be conducted in his absence.  Id.  Nonetheless, Barclay refused to attend the hearing.  Id.

Barclay further alleges that Selsky was biased, prejudicial, arbitrary, capricious and unfair in his decision upholding the charges against him relating to the November 21, 2001, incident.  Evidence relied upon in the administrative proceedings  included the medical report, the misbehavior report, the disciplinary hearing report, and the hearing transcript.  Id. Ex. C-F.  These records indicate that plaintiff had an altercation with Wingate which resulted in a bloody nose, cut lip, bruises, and scratches.  Id. Ex. F at 12.  When ordered out of the cell, Barclay did not comply.  Id. at 13.  Barclay was found guilty of failure to follow a direct order and a movement violation, id. at 16, which Selsky upheld on administrative appeal. There is some evidence to support the guilty finding.  Therefore, Selsky did not violate Barclay's due process rights by this finding.  See Franco, 854 F.2d at 588.

Thus, the record establishes that plaintiff was given all the process that was due, and no jury could find in his favor with respect to lack of hearings or arbitrary and capricious administrative appeal decisions, Barclay's first type of alleged due process violation.

The next type of due process claim that Barclay asserts is that the conditions of his confinement in keeplock deprived him of a liberty interest.  In this regard, he contends that his confinement was unfit for a disabled person, placed him in situations of violent confrontation exposing him to injury, and deprived him of sufficient exercise and food. However, plaintiff does not describe the differences between his confinement in keeplock and in the general population.  Nor does he describe any specific ways in which keeplock confinement affected him as a disabled person, exposed him to injury, or deprived him of sufficient exercise and food in any manner different from the general population.  Thus, he has failed to adduce any evidence upon which a jury could find that his keeplock confinement created an atypical and significant deprivation from which the State could have created a liberty interest.  See Sandin, 515 U.S. at 486, 115 S. Ct. at 2301.  Further, Barclay has not even alleged that the conditions of his confinement were so extreme as to implicate the Due Process clause on its own.  Id. at 484, 115 S. Ct. at 2300.  Because plaintiff has not set forth any evidence to create a question of fact implicating existence of a liberty interest in being free from keeplock confinement, this portion of his due process claim must be dismissed.

The third category of due process claims Barclay asserts is that many of the misbehavior reports against him were false.  However, false charges do "not give rise to a per se constitutional violation."  Freeman, 808 F.2d at 953.  Plaintiff has not alleged that the disciplinary proceedings deprived him of procedural due process, other than as discussed above.  Accordingly, any claims based upon false misbehavior reports must be dismissed.

In sum, none of Barclay's claims grounded in procedural due process can survive defendants' motion for summary judgment, either because he failed to adduce sufficient evidence to create a question of fact or the complaint fails to state a claim.

## C. **Retaliation**

Barclay claims that misbehavior reports were falsely lodged against him, disciplinary dispositions were wrongly upheld on administrative appeal, and exercise and food were wrongly denied him in retaliation for him filing civil rights lawsuits and for taking advantage of the internal prison grievance system.  The defendants named in this claim are Super. Ricks, CO Chapman (John Doe), CO Skiff (John Roe), CO Kenny, Kelly, Sgt. Zernigil, CO Hall, CO Ashlaw, CO James, and St. Lavalley.

The First and Fourteenth Amendments guarantee the "right of access to the courts or similar judicial forums" which encompasses  the broader "right to petition government for redress of grievances."  Franco, 854 F.2d at 589.  Thus, even where due process is provided in the disciplinary proceedings, where the discipline is brought in retaliation for exercise of constitutional rights it may be actionable under Section 1983.  Id.  However, there must be some factual dispute in order to survive summary judgment.  Cf. id. (remanding where material "contested factual allegations" were "in dispute").  In order to succeed on a retaliation claim, a plaintiff must establish that he engaged in protected conduct and that the "protected conduct was a substantial or motivating factor in the prison officials' decision to discipline" him.  Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002).  Once plaintiff has made that showing, the burden shifts to the defendants to establish that the discipline would have been imposed "even absent the retaliatory motivation."  Id.  This burden can be met by establishing that the plaintiff did commit the most serious of the charged infractions.  Id.

Here Barclay undoubted engaged in protected conduct--filing lawsuits regarding prison conditions and participating in the prison administrative grievance system.  The difficulty lies in establishing a retaliatory motive.  Plaintiff relies upon the protected conduct itself as the motivating factor.  However, more than conclusory allegations are required to survive a summary judgment motion.  Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995); Bartley v. Collins, No. 95 Civ. 10161, 2006 WL 1289256 (S.D.N.Y. May 10, 2006).  Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives.  Colon, 58 F.3d at 872-73; Bartley, 2006 WL 1289256, at * 8.

Review of the timing of the protected conduct and the allegedly retaliatory disciplinary proceedings reveals no temporal proximity.  Barclay filed federal lawsuits on December 28, 2000; March 2, 2001; April 8, 2002; and June 10, 2002.  This suit was filed on November 20, 2002.  Plaintiff took advantage of the prison grievance system with regard to nearly all of the disciplinary proceedings brought against him over the years of his incarceration.  Prison officials documented incidents of misbehavior leading to disciplinary confinements and other losses of privileges beginning in November 1997 and continuing frequently thereafter.  Specifically, incidents of misbehavior on November 24, 1997; September 24, 1998; January 18, 1999; June 18, 1999; March 30, 1999; September 8, 1999; February 25, 2000; October 20, 2000; December 3, 2000; February 4, 2001; February 27, 2001; March 1, 2001; March 24, 2001; April 16, 2001; April 17, 2001; April 25, 1001; May 18,

2001; November 21, 2001; November 20, 2002; November 21, 2002; and March 3, 2003;[3] led to disciplinary proceedings.  Thus, no relationship can be derived between plaintiff's filing lawsuits or grieving the disciplinary proceedings and additional disciplinary proceedings brought against him.

The preceding listing of disciplinary proceedings against plaintiff demonstrates that he did not have a good disciplinary record prior to engaging in protected action, negating any circumstantial inference of retaliatory motive on this basis.

Plaintiff was found not guilty of two of the charges brought on November 21, 2001, and guilty of the other two.  The finding was upheld on appeal but overturned by administrative proceedings.  However, plaintiff admits that technically he was guilty of the charges for which he was initially found guilty--disobeying a direct order and a movement violation, tempering somewhat any inference of improper motive.  His defense to the charges was not that he did not violate those rules, but that he should be excused from the violation because his disability made it difficult for him to follow the orders.  There are no statements from the defendants as to their motives for making the disciplinary charges.

In viewing all of these factors, it is impossible to conclude that circumstantial evidence could support a finding that there was a retaliatory motivation for the disciplinary charges of which Barclay complains.  Accordingly, he has not met his burden of creating a question of fact as to his retaliation claims and they must be dismissed.  See Colon, 58 F.3d at 872 (warning that "prisoners' claims of retaliation" must be met with "skepticism and particular care" since they are easily fabricated).

---

[3] Plaintiff's disciplinary record after March 3, 2003, is not included in the record.

### D. Conspiracy

Barclay alleges that the defendants conspired to deprive him of his constitutional rights, including equal protection and due process, among others.  In light of the determinations that no genuine triable issue remains as to plaintiffs' substantive constitutional claims, and that the allegations of conspiracy are "vague and unsupported by description of particular overt acts," the conspiracy claim must be dismissed.  See Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights" must be dismissed.)

### E. Race Discrimination

Plaintiff's complaint alleges that defendants racially discriminated against him "because he is black man imprisoned they seriously hated him."  (Am. Compl. ¶ 131.)  His other submissions in opposition to defendants' motion for summary judgment provide no more illumination as to any factual basis for this claim.  This claim must be dismissed.  See Colon, 58 F.3d at 872 (conclusory allegations of civil rights violations insufficient to survive summary judgment).

## V. CONCLUSION

Barclay has failed to adduce facts sufficient to create a genuine issue for trial with regard to his claims brought under the Eighth and Fourteenth Amendments.  His retaliation claim fails because he has set forth no facts from which an inference could be made that the adverse actions against him were motivated by his protected activities.  Plaintiff's conspiracy and race discrimination claims consist solely of conclusory allegations and therefore cannot survive summary judgment.  Given the foregoing dispositions of plaintiff's claims, it is unnecessary to discuss his claim to entitlement to emotional distress damages pursuant to

28 U.S.C. § 1997.  It is also unnecessary to address defendants' personal jurisdiction and qualified immunity arguments.

Accordingly, it is

ORDERED that defendants' motion for summary judgment is GRANTED and the complaint is DISMISSED in its entirety.

The Clerk is directed to enter judgment accordingly.


IT IS SO ORDERED.

_____

United States District Judge


Dated:  March 19, 2007
           Utica, New York.